Manohar Raju, Public Defender
Matt Gonzalez, Chief Attorney

HAYLEY UPSHAW (SBN #257935)
San Francisco Public Defender's Office
555 7th Street
San Francisco, California 94103
Telephone: (415) 754-3762
hayley.upshaw@sfgov.org

*Pro Bono Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL BARRENECHEA<br>        Petitioner,<br><br>            v.<br><br>SERGIO ALBARRAN, et. al.,<br><br>        Respondents. | No. _____<br><br>**EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER; POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Petitioner Miguel Angel Barrenechea ("Mr. Barrenechea") hereby moves this Court for an order enjoining and restraining Respondents, Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), from arresting Mr. Barrenechea unless and until he is provided with a pre-deprivation hearing before a neutral adjudicator, as required by the Due Process clause of the Fifth Amendment, to determine whether the government can justify the necessity of his reincarceration by clear and convincing evidence.

The reasons in support of this Motion are set forth in the accompanying Memorandum of Points and Authorities. This Motion is based on the attached Declaration of Counsel Hayley Upshaw with Accompanying Exhibits in Support of Petition for Writ of Habeas Corpus and Ex-Parte Motion for Temporary Restraining Order. As set forth in the Points and Authorities in support of this Motion, Mr. Barrenechea raises that he warrants a temporary restraining order due to his weighty liberty interest under the Due Process Clause of the Fifth Amendment in preventing his unlawful and unilateral re-incarceration by Respondents without a neutral hearing.

WHEREFORE, Mr. Barrenechea prays that this Court grant his request for a temporary restraining order enjoining and restraining DHS and ICE from arresting him unless and until he is afforded a hearing before on the question of whether his re-incarceration would be lawful. The only mechanism to ensure that he is not continuously unlawfully detained in violation of his due process rights is a temporary restraining order from this Court.

Respectfully submitted this 16th day of September, 2025.

_/s/ Hayley Upshaw_
Hayley Upshaw
Attorney for Petitioner

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................1

**STATEMENT OF FACTS AND CASE** ....................................................3

    I.      Mr. Barrenechea's Lengthy Residence And Strong Family Ties To
           The United States ..................................................................3

    II.     Criminal History ....................................................................4

    III.    Mr. Barrenechea's Rehabilitation In Custody ............................4

    IV.    District Court Judge Found Mr. Barrenechea Not To Be A Danger
           And Granted Compassionate Release In May 2020 ..................4

    V.     Released on Own Recognizance by ICE in May 2020 ................5

    VI.    Mr. Barrenechea's Exemplary Post-Release Conduct ................5

    VII.   Support for U.S. Citizen Wife Diagnosed With Stage 4 Cancer in
           2024    7

    VIII.  Danger of Re-Arrest By Ice Despite Mr. Barrenechea's
           Compliance With All Release Conditions ................................8

**LEGAL STANDARD** ..........................................................................8

**ARGUMENT** ....................................................................................9

    I.      Mr. Barrenechea Is Likely To Succeed On The Merits Of His
           Claim That The Constitution Requires A Hearing Before A Neutral
           Judge Before Any Re-Arrest By Ice ......................................9

    Ii.     Mr. Barrenechea Will Suffer Irreparable Harm Absent Injunctive
           Relief From This Court ........................................................14

    III.    The Balance Of Equities And The Public Interest Favor Granting
           Mr. Barrenechea A Temporary Restraining Order ..................16

**CONCLUSION** ................................................................................18

NOTICE OF MOTION AND MOTION FOR EX PARTE
TRO

1

### TABLE OF AUTHORITIES

CASES

2

*ALLIANCE FOR THE WILD ROCKIES V. COTTRELL*,
3   632 F.3D 1127 (9TH CIR. 2011) ........................................................................... 11
*ALVA V. KAISER*,
4   2025 WL 2419262 (N.D. CAL. AUG. 21, 2025) .................................................. 5, 12
*ARIZ. DREAM ACT COAL. V. BREWER*,
5   757 F.3D 1053 (9TH CIR. 2014) ........................................................................... 19
6 *BLACK V. DECKER*,
   103 F.4TH 133 (2D CIR. MAY 31, 2024) ............................................................. 16
7 *DIOUF V. NAPOLITANO*,
   634 F.3D 1081 (9TH CIR. 2011) ........................................................................... 14
8 *ELROD V. BURNS*,
   427 U.S. 347 (1976) .............................................................................................. 18
9 *GAGNON V. SCARPELLI*,
   411 U.S. 778 (1973) ......................................................................................... 12, 14
10
*GARCIA V. BONDI ET AL.*,
11   2025 WL 1676855 (N.D. CAL. JUNE 14, 2025) ................................................... 17
*GONZALEZ-FUENTES V. MOLINA*,
12   607 F.3D 864 (9TH CIR. 2010) ............................................................................. 12
*GUILLERMO M. R. V. KAISER*,
13   NO. 25-CV-05436-RFL, --- F. SUPP. 3D ---, 2025 WL 1983677 (N.D. CAL. JULY 17, 2025)
14   .................................................................................................................PASSIM
*HAYGOOD V. YOUNGER*,
15   769 F.2D 1350 (9TH CIR. 1985) ........................................................................... 15
*HERNANDEZ V. SESSIONS*,
16   872 F.3D 976 (9TH CIR. 2017) ................................................................. 16, 17, 19
17 *HURD V. D.C., GOV'T*,
   864 F.3D 671 (D.C. CIR. 2017) ....................................................................... 12, 14
18 *JOHNSON V. WILLIFORD*,
   682 F.2D 868 (9TH CIR. 1982) ............................................................................. 12
19 *JORGE M.F. V. JENNINGS*,
   534 F. SUPP. 3D 1050 (N.D. CAL. 2021) ............................................................ 4, 12
20
*LOPEZ V. HECKLER*,
21   713 F.2D 1432 (9TH CIR. 1983) ........................................................................... 18
*MATHEWS*,
22   424 U.S. .................................................................................................................. 16
23 *MELENDRES V. ARPAIO*,
   695 F.3D 990 (9TH CIR. 2012) ............................................................................. 18
24 *MORRISSEY V. BREWER*,
   408 U.S. 471 (1972) .....................................................................................PASSIM
25 *NKEN V. HOLDER*,
   556 U.S. 418 (2009) .............................................................................................. 18
26 *ORTEGA V. BONNAR*,
   415 F. SUPP. 3D 963 (N.D. CAL. 2019) ............................................................... 12
27 *ORTEGA V. KAISER*,
28   2025 WL 2243616 (N.D. CAL. AUG. 6, 2025) ................................................... 5, 12

ii

NOTICE OF MOTION AND MOTION FOR EX PARTE
TRO

*PINCHI V. NOEM*,
   NO. 5:25-CV-05632-PCP, --- F. SUPP. 3D ---, 2025 WL 2025 WL 2084921 (N.D. CAL.
   JULY 25, 2025) ................................................................................................................. 5, 12
*PREAP V. JOHNSON*,
   831 F.3D 1193 (9TH CIR. 2016) ........................................................................................ 17
*PREMINGER V. PRINCIPI*,
   422 F.3D 815 (9TH CIR. 2005) .......................................................................................... 19
*ROMERO ROMERO V. KAISER*,
   2022 WL 1606294 (N.D. CAL. MAY 20, 2022) ........................................................... 5, 12
*SARAVIA V. SESSIONS*,
   280 F. SUPP. 3D 1168 (N.D. CAL. 2017) ........................................................................ 14
*SINGH V. HOLDER*,
   638 F.3D 1196 (9TH CIR. 2011) ........................................................................................ 15
*STUHLBARG INT'L SALES CO. V. JOHN D. BRUSH & CO.*,
   240 F.3D 832 (9TH CIR. 2001) .......................................................................................... 10
*WINTER V. NAT. RES. DEF. COUNCIL, INC.*,
   555 U.S. 7 (2008) ............................................................................................................... 10
*YOUNG V. HARPER*,
   520 U.S. 143 (1997) .................................................................................................... 12, 14
*YOUNGBERG V. ROMEO*,
   457 U.S. 307 (1982) ........................................................................................................... 15
*ZADVYDAS V. DAVIS*,
   533 U.S. 678 (2001) .................................................................................................... 11, 15
*ZAKZOUK V. BECERRA*,
   2025 WL 2097470 (N.D. CAL. JULY 26, 2025) .............................................................. 17
*ZEPEDA V. INS*,
   753 F.2D 719 (9TH CIR. 1983) ........................................................................................ 18
*ZINERMON V. BURCH*,
   494 U.S. 113 (1990) ........................................................................................................... 14
*ZINERMON*,
   494 U.S. .................................................................................................................. 14, 15

STATUTES

18 U.S.C. § 3582(C)(1)(A) ..................................................................................................... 3, 6

RULES

21-15993 (9TH CIR .............................................................................................................. 5, 12
RULE 65(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE ........................................ 1

NOTICE OF MOTION AND MOTION FOR EX PARTE
TRO

## **INTRODUCTION**

Petitioner Miguel Barrenechea ("Mr. Barrenechea"), by and through undersigned counsel, hereby brings this ex parte motion for a temporary restraining order to prevent Respondents, the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), from re-detaining him at a scheduled appearance in San Francisco on September 19, 2025, or thereafter, in violation of his due process rights. Mr. Barrenechea has a vested liberty interest in his release that requires a pre-deprivation hearing with a neutral judge *before* he may be detained by Respondents.

Mr. Barrenechea is a 72 year-old grandfather who has lived in California as a permanent resident for nearly five decades. He has been married to his wife Indiana, a U.S. citizen, for the past fifty years and they have two U.S. citizen children.

In 1996, Mr. Barrenechea received a mandatory life sentence for being a minor participant in a drug trafficking conspiracy. He spent 28 years in federal prison striving for self-improvement: he did some 3,000 hours of programming, worked consistently, mentored other inmates, and was discipline-free for the last 13 years of his sentence. He also maintained a loving and supportive relationship with his wife of 50 years, his children, and his extended family, for whom he was a source of strength and inspiration despite his incarceration.

On May 7, 2020, Honorable Maxine M. Chesney granted Mr. Barrenechea's Motion for a Reduction of Sentence (Compassionate Release) Pursuant to 18 U.S.C. § 3582(c)(1)(A) and ordered his release from custody. Judge Chesney found that Mr. Barrenechea "does not pose a danger to any person or the community."

After Mr. Barrenechea's release from federal prison on or about May 7, 2020, ICE briefly detained him but soon after granted him release the following day with an Order of Release on

1

NOTICE OF MOTION AND MOTION FOR EX PARTE TRO

Recognizance. Mr. Barrenechea has complied with his release requirements including check ins with ICE and the Intensive Supervision Appearance Program (ISAP) (ICE's alternative detention program), since his release.

Soon after his release, Mr. Barrenechea's deportation case was re-calendared and it pending before the San Francisco Immigration Court. He filed an application for protection under the Convention Against Torture ("CAT"). Mr. Barrenechea's next immigration court hearing is scheduled for December 17, 2026.

In the last five years at liberty, Mr. Barrenechea has proved the wisdom of Judge Chesney's compassionate release decision through his good conduct. Mr. Barrenechea has complied with all the terms of supervised release through the federal court and has reported to ICE and ISAP as directed, appeared for all of his immigration court hearings, and avoided any new criminal contact. He has become an integral part of the care team for his wife Indiana, who was recently diagnosed with stage four metastatic breast cancer. And he has served his community through his job at Five Keys, a non-profit supporting the unhoused in San Francisco.

Mr. Barrenechea brings this lawsuit because he is terrified that he will be detained and separated from his family, even though there has been no change in circumstances to suggest he is a danger or flight risk. In recent months, ICE has begun detaining individuals like Mr. Barrenechea at routine ICE check-ins, despite noncitizens' prior compliance.

Due process principles compel this Court's intervention to enjoin Respondents from unilaterally arresting Mr. Barrenechea without a neutral review of whether his civil detention meets any valid purpose. It is well-established that people who have been conditionally released from custody have a protected liberty interest in their freedom. *See Morrissey v. Brewer*, 408 U.S. 471, 482-483 (1972). Many district courts across California have recognized that noncitizens like Mr. Barrenechea who are released from ICE custody have a significant liberty

NOTICE OF MOTION AND MOTION FOR EX PARTE
TRO

interest protected by due process. *See, e.g.*, *Jorge M.F. v. Jennings,* 534 F. Supp. 3d 1050 (N.D. Cal. 2021)*, notice of appeal filed,* No. 21-15993 (9th Cir. 2021); *Romero Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1606294 at *2 (N.D. Cal. May 20, 2022); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, --- F. Supp. 3d ---, 2025 WL 1983677 (N.D. Cal. July 17, 2025); *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, --- F. Supp. 3d ---, 2025 WL 2025 WL 2084921 (N.D. Cal. July 25, 2025); *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616 at *5-6 (N.D. Cal. Aug. 6, 2025); *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262 at *3-4 (N.D. Cal. Aug. 21, 2025). These same courts have found that this protected liberty interest entitles noncitizens to a neutral custody review *before* they may be re-detained by ICE. A neutral hearing avoids the risk of erroneously depriving Mr. Barrenechea of his liberty—as the statute would otherwise provide him with no hearing whatsoever—and it does nothing to undermine the government interests in protecting the community and preventing risk of flight, questions that would be evaluated at a neutral hearing.

For these and the foregoing reasons, this Court should join its colleagues in holding that due process prohibits Respondents from re-detaining Mr. Barrenechea without notice and a hearing, *prior* to any re-detention. The Court should also find that Mr. Barrenechea meets the standard for a temporary restraining order to preserve the status quo. Absent this Court's intervention, Mr. Barrenechea will suffer irreparable harm in the form of arbitrary arrest without a neutral review. The balance of equities also strongly favor Mr. Barrenechea, as ensuring Respondents' fealty to the Constitution lies in the public interest.

## STATEMENT OF FACTS AND CASE

I.  MR. BARRENECHEA'S LENGTHY RESIDENCE AND STRONG FAMILY TIES
    TO THE UNITED STATES

Mr. Barrenechea is a seventy-two year old national of Peru. *See* Declaration of Miguel Barrenechea ("Miguel Barrenechea Decl.") ¶ 1, Exh D. He has resided in the United States continuously since being admitted as a permanent resident in March of 1977. *Id.* ¶ 6.

Mr. Barrenechea has been married for fifty years to Indiana Barrenechea, a U.S. citizen. *Id.* They have two U.S. citizen children, Indiana Lizana and Arturo. *Id.* ¶ 7. Mr. Barrenechea also has four grandchildren as well as another expected this week, all citizens of the United States. *Id.*

## II. CRIMINAL HISTORY

Mr. Barrenechea was arrested a number of times, most recently in 1992, primarily for nonviolent drug offenses. *See U.S. v. Cornejo*, 3:92-cr-00403-MMC-3 Dkts. 2432 at 22 (Motion for Compassionate Release), 2438 at 8-9 (Opposition to Motion for Compassionate Release), 2446 (Order Granting Compassionate Release) (N.D. Cal 1992) (also attached as Exh. A). He has no serious violent felonies. *Id.* Dkt. 2432 at 22.

In 1996, Mr. Barrenechea received a mandatory life sentence for being a minor participant in a drug trafficking conspiracy. *See U.S. v. Cornejo*, 3:92-cr-00403-MMC-3 Dkt. 2446 (Order Granting Compassionate Release).

## III. MR. BARRENECHEA'S REHABILITATION IN CUSTODY

Mr. Barrenechea spent 28 years in federal prison striving for self-improvement: he did some 3,000 hours of programming, worked consistently, mentored other inmates, and was discipline-free for the last 13 years of his sentence. *See U.S. v. Cornejo*, 3:92-cr-00403-MMC-3 Dkt. 2432 at 23-26 (Motion for Compassionate Release). He also maintained a loving and supportive relationship with his wife, his children, and his extended family, for whom he was a source of strength and inspiration despite his incarceration. *Id.*

## IV. DISTRICT COURT JUDGE FOUND MR. BARRENECHEA NOT TO BE A DANGER AND GRANTED COMPASSIONATE RELEASE IN MAY 2020

On May 7, 2020, Honorable Maxine M. Chesney granted Mr. Barrenechea's Motion for a Reduction of Sentence (Compassionate Release) Pursuant to 18 U.S.C. § 3582(c)(1)(A) and ordered his release from custody. Judge Chesney found "extraordinary and compelling reasons" warranting a reduction of his life sentencing including among other things that his life sentence was for "nonviolent drug offenses in which, at the time of sentencing, he was found to be a minor participant", his "record of rehabilitation", and his "increased risk of contracting COVID-19 due to his age, as well as the additional potential risk based on his history of latent tuberculosis.". In ordering his release from custody, Judge Chesney found that Mr. Barrenechea "does not pose a danger to any person or the community." *See* Exh A, *U.S. v. Cornejo*, 3:92-cr-00403-MMC-3 Dkt. 2446.

## V.  RELEASED ON OWN RECOGNIZANCE BY ICE IN MAY 2020

After Mr. Barrenechea's release from federal prison on or about May 7, 2020, he was taken briefly into ICE custody and then released on an Order of Release on Recognizance on or about May 8, 2020. *See* Exh. B at 2-5, 8. He has remained out of custody since that time.

## VI.  MR. BARRENECHEA'S EXEMPLARY POST-RELEASE CONDUCT

Soon after his release, Mr. Barrenechea's deportation case was re-calendared before the San Francisco Immigration Court. *See* Exh. B, Miguel Barrenechea Decl. ¶ 14. He appeared in Court and filed an application for protection under the Convention Against Torture. *Id.* ¶ 15-16. Mr. Barrenechea's next immigration court hearing is scheduled for December 17, 2026. Exh. C, Immigration Court Hearing Notice.

Mr. Barrenechea has lived without issue in his California community since being freed from immigration detention on or about May 7, 2020. Exh. D, Miguel Barrenechea Decl. ¶ 18-20. He lives with his wife Indiana in San Francisco. Exh. E, Indiana Barrenechea Letter. They

have regular visits with their children who also live in the area, and with their grandchildren. *Id.*; *see also* Exhs. J and K (letters from his daughter and daughter-in-law). Mr. Barrenechea found full-time employment at a community-based organization called Five Keys, serving individuals facing homelessness. *See* Exh. D Miguel Barrenechea Decl. ¶ 18-20; Exh. E Indiana Barrenechea Letter; Exh. I, Letter from Employer Five Keys. He is a hard-working member of society, giving back to the community through his work and paying taxes. *Id.*; *see also* Exh. H, 2024 Tax Return.

On January 30, 2023, the U.S. Probation Department placed Mr. Barrenechea on the "Low Risk Supervision" caseload based on the Post Conviction Risk Assessment, an evidence based risk assessment tool. *See* Exh. F, Petition for Early Termination of Supervision (Dkt. 2455).

In March 2024, the U.S. Probation Department petitioned the District Court to consider early termination of his supervised release requirements based on Mr. Barrenechea's conduct and the interests of justice. *See* Exh. F, Petition for Early Termination of Supervision (Dkt. 2455). The Probation Officer noted that Mr. Barrenechea had completed three years and 10 months of his 5 year supervised release period and that he had been cooperative and complaint, with no violations. *Id.* at 2. The Probation Officer noted that since his release and commencement on supervision, he had resided in San Francisco, been employed full-time, and had satisfied his conditions of supervision. *Id.* On April 23, 2024, the Court again recognized Mr. Barrenechea's low risk of recidivism, granting Probation's Motion for Early Termination of Supervision after the Government confirmed that Mr. Barrenechea also remained in compliance with his conditions from ICE and ISAP. *See* Exh. G, Order Granting Early Termination of Supervision, Dkt. 2461.

NOTICE OF MOTION AND MOTION FOR EX PARTE TRO

Mr. Barrenechea has appeared in Immigration Court when required. *See* Exh. D, Miguel Barrenechea Decl. ¶ 15. Mr. Barrenechea's next immigration court hearing is scheduled for December 17, 2026. Exh. C, Immigration Court Hearing Notice.

Mr. Barrenechea has also complied with ICE reporting requirements and its Alternatives to Detention program known as ISAP. *See* Exh. D, Miguel Barrenechea Decl. ¶ 20-21; Exh. E Indiana Barrenechea Letter; Exh. G; Order Granting Early Termination of Supervision.

VII.   SUPPORT FOR U.S. CITIZEN WIFE DIAGNOSED WITH STAGE 4 CANCER IN 2024

In 2024, Mr. Barrenechea's wife of 50 years, Indiana Barrenechea, began experiencing significant health symptoms. She was eventually diagnosed with Stage 4 breast cancer, which had metasticized. *See* Exh. L, Email from Indiana Barrenechea with UCSF Oncologist Summary of Diagnosis and Treatment. Mr. Barrenechea took a leave of absence from work in order to care for her when her illness was most acute. *See* Exh. D, Miguel Barrenechea Decl. ¶ 23. Mrs. Barrenechea reports that Mr. Barrenechea has provided ongoing caregiving and assistance with her many appointments and treatment. *See* Exh. E, Indiana Barrenechea Letter. Her doctor notes that her "active cancer represents a life-threatening illness" and that her "risk of morbidity" and "life-threatening complications" is high and that she requires regular and intensive monitoring. *See* Exh. M, Email from Indiana Barrenechea with UCSF Oncologist Summary of Diagnosis and Treatment.

Mr. Barrenechea's daughter emphasizes the critical role her father has played in her mother's care, treatment and well-being. "As her condition progresses, it has become increasingly clear that she needs my father more than ever. Not only does she require physical assistance, but she also needs the emotional and mental support only a life partner can provide. The love and companionship they share is irreplaceable, and I firmly believe that my father's

presence is critical to ensuring her well-being during this incredibly difficult time." Exh. J, Letter of Lizana Barrenechea.

VIII.    DANGER OF RE-ARREST BY ICE DESPITE MR. BARRENECHEA'S COMPLIANCE WITH ALL RELEASE CONDITIONS

Mr. Barrenechea's removal proceedings remain pending, but he was ordered to report in person for a check in at ICE this Friday September 19, 2025 at 8am. Due to changes in policy, he is at imminent risk of detention.

Under the Trump Administration, ICE has dramatically increased the number of people it arrests, with the total detained population reaching its highest verifiable point in years.[1] The American Immigration Lawyers Association ("AILA") has reported a nationwide uptick of arrests at ICE check-ins.[2]

Mr. Barrenechea was given a future reporting date of September 19, 2025. *See* Exh. M, Email from ICE. He fears that he will be detained and separated from his wife at his check-in and seeks a TRO from this Court to prevent such detention without Due Process.

## **LEGAL STANDARD**

Petitioner is entitled to a temporary restraining order if he establishes that he is "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D.*

---

[1] *See* Austin Kocher, ICE Detention Numbers Hit New High: 59,380 People Behind Bars, August 14, 2025, available at: https://austinkocher.substack.com/p/ice-detention-numbers-hit-new-high.
[2] *See* AILA Doc No. 25081204, August 13, 2025, available at: https://www.aila.org/featured-issue-immigration-enforcement-under-trump-2-0 ("ICE targets people who are following the legal process…including those who show up for hearings and appointments[.]").

8

*Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). Even if Petitioner does not show a likelihood of success on the merits, the Court may still grant a temporary restraining order if he raises "serious questions" as to the merits of his claims, the balance of hardships tips "sharply" in his favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

As set forth below, Petitioner satisfies both standards. He faces imminent and unlawful arrest by Respondents without a hearing before a neutral adjudicator to determine the necessity of his re-detention, in violation of his due process rights. Absent this Court's intervention, Mr. Barrenechea will suffer irreparable injury in the form of unilateral arrest and family separation from his wife who is active treatment for Stage 4 Cancer. The Court must issue a temporary restraining order to preserve the status quo.

## **ARGUMENT**

I. MR. BARRENECHEA IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM THAT THE CONSTITUTION REQUIRES A HEARING BEFORE A NEUTRAL JUDGE BEFORE ANY RE-ARREST BY ICE

A. MR. BARRENECHEA HAS ACCRUED A STRONG LIBERTY INTEREST IN HIS CONTINUED RELEASE FROM ICE CUSTODY

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Once an individual is freed from custody—even where that release is lawfully revocable—he grows a strong interest in remaining physically unconfined by the government. This genesis of this idea began in *Morrissey*, where the Supreme Court held that a person paroled following a criminal conviction has a protected liberty interest in that conditional release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1982). The Court reasoned that a parolee develops this

9

interest because, "subject to the conditions of his parole, [he] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. Moreover, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* "By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution]." *Id.*

Courts have repeatedly extended this basic principle from *Morrissey*—that individuals have a liberty interest in their conditional release—to similarly-situated groups. *See, e.g.*, *Young v. Harper*, 520 U.S. 143, 152 (1997) (holding that individuals placed in a pre-parole program have a protected liberty interest requiring pre-deprivation process); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973) (holding that individuals released on felony probation have a protected liberty interest requiring pre-deprivation process). Even where someone has obtained liberty through a mistake of law or fact, courts have recognized their cognizable interest in remaining at liberty. *See Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (9th Cir. 2010); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982).

Following *Morrissey* and its progeny, many district courts in California have recognized the strength of a noncitizen's protected liberty interest following release from ICE custody. *See, e.g., See, e.g.*, *Jorge M.F. v. Jennings,* 534 F. Supp. 3d 1050 (N.D. Cal. 2021)*, notice of appeal filed,* No. 21-15993 (9th Cir. 2021); *Romero Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1606294 at *2 (N.D. Cal. May 20, 2022); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, --- F. Supp. 3d ---, 2025 WL 1983677 (N.D. Cal. July 17, 2025); *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, --- F. Supp. 3d ---, 2025 WL 2025 WL 2084921 (N.D. Cal. July 25, 2025); *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616 at *5-6 (N.D. Cal. Aug. 6, 2025); *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262 at *3-4 (N.D. Cal. Aug. 21, 2025).

NOTICE OF MOTION AND MOTION FOR EX PARTE
TRO

Indeed, "[g]iven the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of parolees" from *Morrissey*. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Courts have also held that the longer someone remains out on bond, the weightier their interest in remaining free from ICE custody. *See Rodriguez-Flores v. F. Semaia et al.*, 2:25-cv-06900-JGB-JC, Dkt. 14 at *5 (C.D. Cal) (August 14, 2025 Order Granting TRO and PI).

Just as in those cases, this Court should find that in his five years of freedom, Mr. Barrenechea has accrued a strong liberty interest protected by the Due Process Clause. *See Guillermo M.R.*, -- F.Supp.3d --, 2025 WL 1983677, at *4-5 (finding noncitizen released on bond for two years had a strong liberty interest). Mr. Barrenechea was granted release from custody by a Federal District Court after an individualized finding that he did not pose a danger. Exh. A, Compassionate Release Order. ICE likewise found him not to be a danger or a flight risk, detaining him only briefly after his release from prison and releasing him the following day on an his own recognizance with no bond required. *See* Exh B. Mr. Barrenechea's conditional release pending a final removal decision "enables him to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

For these reasons, Mr. Barrenechea has accrued a substantial liberty interest, and the Court must order procedural safeguards to protect it. *See Guillermo M.R.*, 2025 WL 1983677 at *4-10.

### B. WITHOUT A PRE-DEPRIVATION HEARING BEFORE A NEUTRAL JUDGE, THE RISK OF AN ERRONEOUS DEPRIVATION OF LIBERTY IS HIGH

11

Absent intervention by this Court, Mr. Barrenechea has not received and will not receive any custody redetermination hearing before his re-detention by ICE.

In other words, the agency will never grant Mr. Barrenechea a neutral hearing on whether his detention is constitutional. Compounding the risk of erroneous deprivation, ICE has taken the position in related litigation that it "may add its own conditions of release, even if rejected by [a judge], and may re-detain unilaterally for *any* 'change in circumstances'" whether or not that change is related to danger or flight risk. *Guillermo M.R.*, -- F.Supp.3d --, 2025 WL 1983677, at *8 (emphasis added) ("[A]ccording to Respondents, ICE could re-detain those released for purely technical violations, like being one minute late to a check-in."). Therefore, the risk is high that Mr. Barrenechea will be erroneously deprived of his liberty if ICE is permitted to make an unreviewable decision to re-detain him. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091-92 (9th Cir. 2011) (observing that the risk of an erroneous deprivation of liberty is reduced where a neutral decisionmaker, rather than ICE, makes custody determinations).

Allowing a neutral judge to review the facts would significantly reduce the risk of erroneous deprivation. The Supreme Court has consistently held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property," not after. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). This is so even in cases where that freedom is lawfully revocable. *See Hurd*, 864 F.3d at 683 (emphasis added) (citing *Young*, 520 U.S. at 152 (re- detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon*, 411 U.S. at 782 (holding the same, in context of probation); *Morrissey*, 408 U.S. 471 (holding the same, in context of parole). Only in a "special case" where post-deprivation remedies are "the only remedies the State could be expected to provide" can post-deprivation process satisfy the requirements of due process. *Zinermon*, 494 U.S. at 985.

NOTICE OF MOTION AND MOTION FOR EX PARTE TRO

Here, a pre-deprivation hearing would reveal that there is no material change in circumstances to justify Mr. Barrenechea's urgent re-detention. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H.*, 905 F.3d 1137 (DHS "generally only re-arrests [noncitizens] pursuant to § 1226(b) after a material change in circumstances."). In the last five years, Mr. Barrenechea has complied with all requirements, strengthened his ties to family and community, and appeared for all immigration proceedings as required. No evidence suggests that Mr. Barrenechea is a present danger to the community or a flight risk.

Because the provision of a pre-deprivation hearing is both possible and valuable in preventing an erroneous deprivation of liberty, ICE is required to provide Mr. Barrenechea with notice and a hearing *prior* to any re-incarceration. *See Morrissey*, 408 U.S. at 481-82; *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985); *Zinermon*, 494 U.S. at 985; *see also Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982). At this hearing before a neutral adjudicator, the government must be required to show that there have been changed circumstances such that his 2020 release, approved by both a District Court Judge and by ICE, should be revoked based on clear and convincing evidence that he is a current danger or a flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203-05 (9th Cir. 2011).

## C.  RESPONDENTS' INTEREST IN ARRESTING MR. BARRENECHEA WITHOUT A NEUTRAL HEARING IS LOW

The government's interest in re-detaining Mr. Barrenechea *without a due process hearing* is low and, when weighed against his significant private interest in his liberty, the scale tips sharply in favor of enjoining Respondents from re-detaining him unless and until the government demonstrates by clear and convincing evidence that he is a flight risk or danger to the community.

13

The only valid purpose for civil immigration detention is to prevent danger to the community and ensure a noncitizen's appearance at immigration proceedings. *See Zadvydas*, 533 U.S. at 690. In this case, a pre-detention hearing would do nothing to undermine—and would in fact promote—the government's interest by ensuring a neutral evaluation of flight risk and danger.

Further, Respondents suffer no "fiscal and administrative burdens" by allowing Mr. Barrenechea to maintain his liberty. *See Mathews*, 424 U.S. at 334-35. To the contrary, his continued release will save the government the "staggering" cost it would have otherwise spent on his incarceration. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million."). The government also has an interest in avoiding costly and needless detention. *See Black v. Decker*, 103 F.4th 133, 154 (2d Cir. May 31, 2024) (when a noncitizen "poses no danger and is not a flight risk, all the government does in requiring detention is separate families and remove from the community breadwinners, caregivers, parents, siblings and employees") (cleaned up).

Finally, giving Mr. Barrenechea a bond hearing before a judge is a routine procedure that the government provides to those in immigration jails on a daily basis.

\*       \*       \*

As the above-cited authorities show, Mr. Barrenechea is likely to succeed on his claim that due process requires notice and a hearing before a neutral adjudicator *prior to any* re-incarceration by ICE. And, at the very minimum, he raises serious questions as to his procedural due process claim.

II. MR. BARRENECHEA WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF FROM THIS COURT

14

Mr. Barrenechea will suffer irreparable harm absent injunctive relief from this Court to preserve the status quo and prevent his arbitrary arrest by Respondents.

Multiple courts have granted injunctions in similar scenarios to prevent ICE from arresting people at check-ins, recognizing the high and imminent risk of arrest. *See, e.g.*, *Guillermo M. R. v. Kaiser et al.*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *1 (N.D. Cal. July 17, 2025) (granting preliminary injunction); *Zakzouk v. Becerra*, No. 25-CV-06254 (RFL), 2025 WL 2097470, at *2 (N.D. Cal. July 26, 2025) (granting TRO) ("Based on DHS's stated policy and news reports of non-citizens being detained at checkins, Petitioner-Plaintiff feared that he would be detained without further notice at his check-in[.]"); *Garcia v. Bondi et al*., No. 3:25-CV-05070, 2025 WL 1676855, at *1 (N.D. Cal. June 14, 2025) (granting ex parte TRO).

Mr. Barrenechea and his family would undoubtedly suffer if he were detained by ICE on Friday without a review of whether his detention is warranted. "The irreparable harms imposed on anyone subject to immigration detention or other forms of imprisonment are self-evident." *Guillermo M. R.*, 2025 WL 1983677, at *10 (cleaned up). Noncitizens in ICE custody are held in "prison-like conditions." *Preap v. Johnson*, 831 F.3d 1193, 1195 (9th Cir. 2016). The Ninth Circuit has recognized that people in ICE detention suffer irreparable harm from "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Indeed, the government itself has documented alarmingly poor conditions in ICE detention centers. *See, e.g.*, DHS, Office of Inspector General (OIG), Summary of Unannounced Inspections of ICE Facilities Conducted in Fiscal Years 2020-2023 (2024).

Mr. Barrenechea's 72-year old U.S. citizen wife has stage 4 breast cancer and relies on him for both physical, emotional and economic support. *See* Exh. E, Letter from Indiana

NOTICE OF MOTION AND MOTION FOR EX PARTE TRO

Barrenechea; Exh. J, Letter from daughter Lizana Barrenechea; Exh. M, Email from Indiana Barrenechea with UCSF Oncologist Summary of Diagnosis and Treatment. Mr. Barrenechea is also close to his two adult children and his four (soon to be five) grandchildren. *See* Exh. D, Decl. of Miguel Barrenechea ¶ 7; Exh. J, Letter from daughter Lizana Barrenechea; Exh. K, Letter from daughter-in-law Natalie Barrenechea. Finally, as the District Court noted in its grant of compassionate release in 2020, Mr. Barrenechea also has co-morbidities that would place him at higher risk of serious illness if infected by Covid-19 in detention. *See* Exh. A.

Finally, as detailed *supra*, Mr. Barrenechea contends that his re-arrest absent a hearing before a neutral adjudicator violated his due process rights under the Constitution. It is clear that "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR GRANTING MR. BARRENECHEA A TEMPORARY RESTRAINING ORDER

Where the government is the opposing party, balancing the harm and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of equities and the public interest undoubtedly favor granting this temporary restraining order.

First, the balance of hardships strongly favors Mr. Barrenechea. The government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Therefore, the government cannot allege harm arising from a temporary restraining order or preliminary injunction ordering it to comply with the Constitution.

16

Further, there is no burden on Respondents in allowing Mr. Barrenechea to remain at liberty from ICE detention until he is provided with a pre-deprivation hearing that comports with due process. To the extent Respondents may claim that they are prejudiced by a delay in their ability to re-arrest Mr. Barrenechea, this is a *de minimus* harm, and is clearly outweighed by the substantial harm he would suffer in being detained without first having a neutral review. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.").

Finally, a temporary restraining order is in the public interest. If a temporary restraining order is not entered, the government would effectively be granted unchecked permission to detain Mr. Barrenechea in violation of due process. The public has a strong interest in "upholding procedural protections against unlawful detention." *Guillermo M.R.*, 2025 WL 1983677, at *10. "[I]t would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Hernandez*, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of bonds established by a likely unconstitutional process."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). In Mr. Barrenechea'a case in particular, the public has an interest in avoiding the severe collateral hardship to his U.S. citizen wife, children and grandchildren.

Therefore, the public interest overwhelmingly favors avoiding the cost of erroneous detention and entering a temporary restraining order and preliminary injunction.

NOTICE OF MOTION AND MOTION FOR EX PARTE TRO

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should find that Mr. Barrenechea warrants the entry of a temporary restraining order to maintain the status quo and enjoin Respondents from arresting him unless and until he is afforded a hearing before a neutral judge on whether his re-detention is justified by clear and convincing evidence.

Dated: September 15, 2025                    Respectfully submitted,


<u>/s/ *Hayley Upshaw*</u>
Hayley Upshaw
Attorney for Petitioner

### CERTIFICATE OF COMPLIANCE
### PURSUANT TO CIVIL LOCAL RULE 11-6.2

The undersigned, counsel of record for Petitioner, certifies that this brief contains approximately 5224 words, which complies with the word limit of L.R. 11-6.1.

NOTICE OF MOTION AND MOTION FOR EX PARTE TRO